IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| CARL RANDALL GIBBS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 118-043 |
| | ) | |
| DON BLAKELY, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner brings the above-captioned petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The matter is currently before the Court on Respondent's motion to dismiss the petition as untimely. (Doc. no. 10.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, this petition be **DISMISSED** as untimely, and a final judgment be **ENTERED** in favor of Respondent.

**I.   BACKGROUND**

A jury sitting in the Superior Court of Richmond County, Georgia, convicted Petitioner of malice murder, armed robbery, and two counts of possession of a firearm during the commission of a crime. Gibbs v. State, 757 S.E.2d 842, 843 (Ga. 2014); see also doc. no. 1, p. 1. Petitioner was sentenced on June 4, 2010, to life imprisonment for malice murder, a consecutive term of life imprisonment on the armed robbery charge, and consecutive terms of five years of imprisonment for the two counts of possession of a firearm during the

commission of a crime. Gibbs, 757 S.E.2d at 843 n.1. After denial of his motion for new trial, as amended, Petitioner appealed to the Georgia Supreme Court, arguing the evidence was insufficient to convict him. Id. at 843.

On April 22, 2014, the Supreme Court rejected the evidentiary challenge, but the court vacated the sentence for possession of a firearm during the commission of armed robbery because the trial court erred in sentencing Petitioner for possession of a firearm during the commission of the armed robbery and the commission of murder. Id. at 846. Although the Supreme Court vacated a portion of Petitioner's sentence, it did not remand the case for resentencing. Id. Thus, Petitioner is currently in custody pursuant to the original judgment imposed on June 4, 2010. (See doc. nos. 16-1, 17.) Petitioner did not seek a writ of certiorari from the United States Supreme Court.

On July 7, 2015, Petitioner filed a state habeas corpus petition in the Superior Court of Lowndes County. (Doc. no. 11-1, p. 1.) The state habeas court held a hearing and then denied relief in an order dated September 6, 2016, and filed on September 9, 2016. (Doc. no. 11-2, pp. 1, 13.) Petitioner requested, but the Georgia Supreme Court denied on January 16, 2018, a certificate of probable cause to appeal. (Doc. nos. 1-3, 1-4.) The Georgia Supreme Court issued the remittitur for its denial of the application on February 1, 2018. (Doc. no. 11-4.)

Petitioner raises six grounds for relief in his § 2254 petition,[1] but he did not provide a signature date. (Doc. no. 1, p. 16.) Although Petitioner did not date the petition, he did date

---

[1] Petitioner claims: (1) the weight of the evidence is insufficient to support the jury's verdict; (2) an illegal search and seizure produced evidence used against him; (3) the trial court improperly admitted autopsy photos at trial; (4) the trial court erred in "denying Motion to

2

his Declaration Under Penalty of Perjury and Certificate of Service March 15, 2018. (Doc. no. 2, p. 4.) The first page of Petitioner's motion to proceed *in forma pauperis* ("IFP") bears a "Received" stamp dated February 6, 2018, from the Valdosta State Prison Business Office, but an authorized prison official did not sign and date the motion until March 8, 2018. (Id. at 3.) The Clerk of Court received and docketed the petition and application to proceed IFP on March 19, 2018. (Doc. nos. 1, 2.)

Respondent argues the petition should be dismissed as time-barred under 28 U.S.C. § 2244(d). (See doc. no. 10.) By Respondent's calculation, Petitioner filed his federal petition twenty-eight days too late. (Doc. no. 10-1, p. 6.) Petitioner acknowledges in his petition his judgment of conviction became final over one year ago, but he blames the untimeliness on "extended delay of news from the Supreme Crt, or his attorney; [Petitioner] wrote his attorney, who after couple more months responded, and advised [Petitioner], the Supreme Court denied his appeal on 4-22-2014." (Doc. no. 1, p. 15.) Petitioner does not identify when he found out from his attorney that the Supreme Court denied his direct appeal. (Id.) Petitioner goes on to explain he "immediately" petitioned for his transcripts but was delayed for an unidentified amount of time by "refusals" from unidentified persons, but he eventually filed his state habeas petition on July 7, 2015. (Id.)

Once Respondent moved to dismiss the petition as untimely, Petitioner responded with a typed statement signed by "J. Speed CO II," stating Petitioner "was delayed in receiving his inmate financial records from the Valdosta State Prison Accounting Department" for "over 28 days" because accounting repeatedly rejected the form provided by

---

Impeach Witnesses"; (5) he received ineffective assistance of trial counsel; and (6) he received ineffective assistance of appellate counsel. (See generally doc. nos. 1, 8.)

3

the law library.  (Doc. no. 18-1, p. 5.)  Petitioner also provided a sworn statement by law library clerk Steven Rowe that Petitioner was provided a pre-printed application packet from the Administrative Office of Courts for federal habeas corpus relief in "Jan 2018," but for unknown reasons, accounting personnel repeatedly refused the form for "over a month, into March."  (Id. at 6.)

## II. DISCUSSION

### A. The Petition Should Be Dismissed as Time-Barred.

Pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(d), there is a one-year statute of limitations for § 2254 petitions that runs from the latest of:

> (1)(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Under § 2244(d)(1)(A), a judgment becomes final upon "the conclusion of direct review or the expiration of the time for seeking such review."  Here, the Georgia Supreme Court affirmed Petitioner's convictions and vacated one portion of his sentence on April 22,

4

2014.  Gibbs, 757 S.E.2d at 846, but Petitioner did not seek a writ of certiorari from the United States Supreme Court.  Thus, his convictions became final ninety days later, July 21, 2014, when the time for seeking review by the United States Supreme Court expired.[2]  See Gonzalez v. Thaler, 565 U.S. 134, 149-50 (2012); Jimenez v. Quarterman, 555 U.S. 113, 119-21 (2009).

Petitioner then had one year to file his federal habeas corpus petition or take other action to toll the one-year limitations period.  Pursuant to 28 U.S.C. § 2244(d)(2), the one-year statute of limitations does not run while a properly filed application for state post-conviction or other collateral review is pending in state court.  Cramer v. Sec'y, Dep't of Corr., 461 F.3d 1380, 1383 (11th Cir. 2006).  In Georgia, "when a state habeas petition seeks a certificate of probable cause from the Georgia Supreme Court and the Court denies the request, the petitioner's case becomes complete when the Court issues the remittitur for the denial."  Dolphy v. Warden, Central State Prison, 823 F.3d 1342, 1345 (11th Cir. 2016).

Petitioner filed his state habeas corpus petition on July 7, 2015.[3]  (Doc. no. 11-1, p. 1.)  Because a properly filed state habeas petition tolls the statute of limitations, Cramer, 461 F.3d at 1383, the federal limitations period was tolled until February 1, 2018, when the Georgia Supreme Court issued its remittitur for the denial of Petitioner's application for a certificate of probable cause to appeal.  See Dolphy, 823 F.3d at 1345.  Despite 351 days of

---

[2] Rule 13.1 of the Rules of the Supreme Court of the United States provides that a petition for a writ of certiorari to review a criminal judgment entered by a state court of last resort must be filed within 90 days after entry of judgment.

[3] Petitioner dated his state habeas petition June 26, 2015, (doc. no. 11-1, p. 10), but in Georgia, the mailbox rule does not apply to the original filing of *pro se* state habeas petitions.  See Roberts v. Cooper, 691 S.E.2d 875, 877-78 (Ga. 2010).  Thus, state habeas petitions are filed on the date the clerk receives it, not the date a petitioner signs it.

Petitioner's one-year statute of limitations having elapsed prior to filing his state habeas petition, Petitioner then waited forty-two days until filing his federal habeas corpus petition on March 15, 2018. Because Petitioner did not date his § 2254 petition, the Court has instead used the date he signed his Declaration Under Penalty of Perjury and Certificate of Service which accompanied all of the paperwork received and filed by the Clerk of Court on March 19, 2018. (See doc. no. 1, p. 17; doc. no. 2, pp. 4-5.) The Court uses March 15, 2018 to make its calculation because under the "prison mailbox rule," Petitioner's *pro se* filing is deemed filed on the date of delivery to prison officials for mailing. Houston v. Lack, 487 U.S. 266, 275-76 (1988); Daniels v. United States, 809 F.3d 588, 589 (11th Cir. 2015) (*per curiam*).

Because Petitioner waited forty-two days to file his federal petition after allowing 351 days of his one-year statute of limitations to expire before his state habeas corpus proceedings tolled the clock, his current federal challenge is time-barred and should be dismissed.

### B. The Limitations Period Was Not Otherwise Reset under AEDPA, and Petitioner Has Not Shown that He Is Entitled to Equitable Tolling or that a Fundamental Miscarriage of Justice Has Occurred.

Petitioner has not provided any explanation that would delay or reset his one-year statute of limitations under any statutory sections of AEDPA set forth above. Nevertheless, an otherwise untimely § 2254 petition may be considered if a petitioner can demonstrate that either he is entitled to equitable tolling or that a fundamental miscarriage of justice has occurred. Equitable tolling can be applied to prevent the application of AEDPA's statutory deadline, but only if a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."

6

Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see also Lawrence v. Florida, 549 U.S. 327, 336 (2007).  Nevertheless, equitable tolling is typically applied sparingly, Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000), and is available "only in truly extraordinary circumstances." Johnson v. United States, 340 F.3d 1219, 1226 (11th Cir. 2003).  The petitioner bears the burden of proving his entitlement to equitable tolling, San Martin v. McNeil, 633 F.3d 1257, 1268 (11th Cir. 2011), and will not prevail based upon a showing of either extraordinary circumstances or diligence alone; the petitioner must establish both.  See Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1072 (11th Cir. 2011).

Consideration of an otherwise untimely petition for federal habeas corpus relief may also be appropriate upon a showing that a "fundamental miscarriage of justice" has occurred, whereby "a constitutional violation has probably resulted in the conviction of one who is actually innocent." McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)); see also Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1218-19 (11th Cir. 2000).  The actual innocence exception "is exceedingly narrow in scope," and a time-barred petitioner seeking to invoke it must be able "(1) to present 'new reliable evidence . . . that was not presented at trial,' and (2) to show 'that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt' in light of the new evidence." Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012) (citations omitted).  As the Supreme Court emphasized, "The miscarriage of justice exception, we underscore, applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].' " McQuiggin, 569 U.S. at 395 (emphasis added).

7

Here, Petitioner has not shown that extraordinary circumstances prevented him from timely filing his federal petition or that a miscarriage of justice will occur if his claims are not considered. Petitioner argues two circumstances beyond his control contributed to the untimeliness of his petition. First, appellate counsel failed to timely advise him of the Supreme Court's decision on his direct appeal, requiring him to "write to his attorney several times" before receiving a response "after [a] couple more months." (Doc. no. 1, p. 15; doc. no. 18, p. 2.) Once he learned his direct appeal had been rejected, he "immediately petitioned" for some unidentified transcripts and filed his state habeas petition two months later. (Doc. no. 1, p. 15; doc. no. 18, p. 2.)

The Eleventh Circuit has refused to apply equitable tolling where a prisoner claims to seek information about his case by mail but does not provide evidence or information about alleged contact attempts. Perez v. Florida, 519 F. App'x 995, 997 (11th Cir. 2013) (*per curiam*). Nor does Petitioner's subsequent request for some type of transcript after he found out his direct appeal had been rejected, but before filing a state habeas petition, satisfy the high hurdle for applying equitable tolling because he neither identifies the transcript or explains why it was needed to make any filing. Such conclusory allegations do not meet the "strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence." Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008) (*per curiam*).

Second, Petitioner argues equitable tolling should apply because prison officials in the accounting department improperly and repeatedly returned his IFP paperwork for approximately one month – a period closely tracking the exact amount of time by which his petition, as explained above, is untimely. Notably, Petitioner does not argue prison officials had anything to do with the preparation of the federal habeas petition itself.

8

Under Rule 3(b) of the Rules Governing Habeas Corpus Cases Under Section 2254, "The clerk must file the petition and enter it on the docket." The Advisory Committee Notes to Rule 3(b) explain the rule was amended in 2004 to account for the "significant penalty" a petitioner may suffer if a defective petition could not be sufficiently corrected within the one-year statute of limitations imposed by AEDPA. The Rule is not limited to requiring a clerk to file a petition that may be defective in form: "[T]he clerk would also be required, for example, to file the petition even though it lacked the requisite filing fee or an *in forma pauperis* form." Rule 3(b) advisory committee's note to 2004 amendment.

Thus, any difficulty Petitioner may have had with prison officials returning his *IFP form* does not qualify as an extraordinary circumstance preventing the filing of the *habeas petition*. The Eleventh Circuit does not accept "a lack of legal education and related confusion or ignorance about the law as [an] excuse[] for failure to file in a timely fashion. As with any litigant, *pro se* litigants 'are deemed to know of the-one year statute of limitations.'" Perez, 519 F. App'x at 997 (internal citations omitted). As Petitioner is responsible for knowing when his petition is due, he could have mailed the federal habeas petition without the IFP form once he realized the accounting office was refusing his paperwork. Indeed, the face of the IFP motion shows it was first submitted on February 6, 2018. (Doc. no. 2, p. 1.) The affidavit submitted from the prison law clerk who helped Petitioner with his federal habeas petition avers the application packet was first obtained in "Jan 2018," (doc. no. 18-1, p. 6), well before the expiration of the one-year statute of limitations.

The documents submitted by Petitioner in opposition to the motion to dismiss also state the accounting department at the prison "kept rejecting the IFP form," and describe a

9

"back and forth" exchange that "exceeded over a month." (Id. at 5-6.) Thus, Petitioner's own submissions confirm that at the time he obtained the federal application packet, as well as when he first submitted the IFP form, time remained on his one-year statute of limitations. He could have sent the petition to the Clerk of Court without an IFP motion, and the Clerk would have been required to file it. See Rule 3(b) of the Rules Governing Habeas Corpus Cases Under Section 2254 and advisory committee's note to 2004 amendment.

Nor has Petitioner presented any evidence much less new, reliable evidence to show that he did not commit the offenses of which he was convicted such that no reasonable juror would have found him guilty beyond a reasonable doubt. Rather, it appears from the stated grounds for relief and brief in support Petitioner has a different view of the evidence or believes that if counsel had done something different with the evidence available at the time of trial, the outcome would have been different. However, Petitioner's own interpretation of evidence that existed at the time of trial does not satisfy the extremely rigorous actual innocence standard that would allow consideration of an otherwise time-barred claim only in an "extremely rare" or "extraordinary" case. Rozzelle, 672 F.3d at 1015.

Petitioner does mention he received a letter in July 2015 that would have contradicted evidence about a necklace reportedly stolen from the body of Petitioner's victim, but no such letter has been produced, let alone authenticated. (See doc. no. 8, p. 11.) Nor has Petitioner explained how this one particular fact would have unhinged all the evidence underpinning his convictions. In sum, Petitioner has presented no *evidence* to support, let alone satisfy, the high burden that no reasonable fact finder could have found him guilty of the offenses for which he was convicted. See Ray v. Mitchem, 272 F. App'x 807, 810-11 (11th Cir. 2008) (*per curiam*) (emphasizing "actual innocence means factual innocence, not mere legal

insufficiency" and concluding eleventh hour exculpatory affidavits offering differing theories of what actually happened to victim and letter of questionable origin insufficient to satisfy high burden of actual innocence).

Because Petitioner has not shown he had been pursuing his rights diligently, and some extraordinary circumstance stood in his way to prevent him from timely filing his federal habeas corpus petition or that a miscarriage of justice will occur if the untimely claims are dismissed, neither equitable tolling nor the fundamental miscarriage of justice exception saves the untimely petition from dismissal.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED** (doc. no. 10), this petition be **DISMISSED** as untimely, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 13th day of July, 2018, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA